USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/21/12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
MANUEL MALDONADO,                   :
                                    :
                Plaintiff,          :
                                    :
        -against-                   :
                                    :
CORRECTION OFFICER TIFFANY          :
KINLOCK, et al.,                    :
                                    :
                Defendants.         :
- - - - - - - - - - - - - - - - - -X

09 Civ. 8435 (LAP)

OPINION AND ORDER

LORETTA A. PRESKA, Chief United States District Judge:

    Plaintiff Manuel Maldonado ("Maldonado" or "Plaintiff")
brings this action alleging that his constitutional rights were
violated when he was designated as a centrally monitored case
("CMC") while incarcerated at Rikers Island Correctional
Facility ("Rikers").  Specifically, Plaintiff alleges that his
CMC designation was made and maintained without the due process
procedures he claims were constitutionally mandated.  Defendants
now move to dismiss the action in its entirety pursuant to Fed.
R. Civ. P. 12(b)(6) on the basis that Plaintiff has failed to
state a claim because his CMC designation does not implicate a
protected liberty interest and therefore no violation of the Due
Process Clause is stated.[1]  For the reasons below, Defendants'
motion is GRANTED.

---

[1] By Stipulation dated October 31, 2011, the parties agree that
Defendants' motion to dismiss [dkt. no. 38] shall be construed
to apply equally to the Second Amended Complaint.

I.   BACKGROUND

Plaintiff was arrested in King's County, New York on January 31, 2001 on car theft and related charges. (See Second Amended Complaint ("Compl.") ¶ 21.) The arresting police officer, Steven Yatchenya ("Yatchenya"), informed Assistant District Attorney Lowell Sidney ("ADA Sidney") of the Kings County District Attorney's Office that when Plaintiff was apprehended, he flailed his arms to avoid arrest, and when placed in the police car, he kicked the door, damaging the door panel, and then ran away. (See Declaration of Marilyn Richter in Support of Defendants' Motion to Dismiss ("Richter Decl.") Ex. A (Criminal Complaint, People v. Maldonado), [dkt. no. 39].) Yatchenya ran after him and captured him approximately 75 feet from the police car. (See id.) These facts were incorporated into ADA Sidney's sworn criminal complaint in the case. (Id.) Plaintiff was arraigned on the auto theft and escape charges in Brooklyn Criminal Court on February 2, 2009, and was immediately placed into the custody of the New York City Department of Correction ("DOC"). (Compl. ¶¶ 22-23.)

On February 6, 2009, Plaintiff pleaded guilty to, and was convicted of, unauthorized use of a vehicle. The District Attorney agreed to dismiss the other charges, including the escape charge, in exchange for the guilty plea. (Id. ¶¶ 24-25.)

2

Plaintiff was housed at Rikers under DOC custody from February 2, 2009 until October 1, 2009, when he was released from jail. At Rikers, he was first housed at the George R. Vierno Center ("GRVC") and then following his sentencing on May 27, 2009, was moved to the Eric M. Taylor Center ("EMTC"), the location for sentenced inmates.  (Id. ¶¶ 10, 34, 59-60.)

While Plaintiff was initially housed in a general population area at Rikers, on April 6, 2009, Defendant Officer Kinloch ("Kinloch") informed Plaintiff that he was being designated a CMC.  Kinloch briefly showed plaintiff a form entitled Notice of Right to Due Process Hearing ("the Notice") and asked him to sign it but did not allow him adequate time to review the form.  (Id. ¶¶ 26-27, 29, 31-32.)  Plaintiff was moved from general population to the maximum security housing unit the next day.  Plaintiff remained in CMC status for 178 days (or just less than six months), until he was released from jail.  (Id. ¶¶ 33-34.)

Owing to his CMC status, Plaintiff experienced the following conditions:  (1) more restrictions on his movement about the jail; (2) living with inmates with more serious and notorious criminal charges against them; (3) more restrictive restraints during transport, including a black box attached to his handcuffs as well as waist chains and complete leg shackles;

3

and (4) temporary episodes of involuntary muscle movements in
his shoulder and upper-back along with significant pain after
each use of the transport restraints.  (Id. ¶¶ 35-40.)

On April 7, 2009, Plaintiff wrote to Defendant Kenneth
Williams ("Williams"), then GRVC Deputy Warden of Security, to
contest his CMC designation.  On April 16, 2009, Plaintiff was
again provided a copy of the Notice.  On April 17, 2009,
Plaintiff wrote to the Adjudication Unit to request a hearing
but did not ever receive one.  Over the next several months,
Plaintiff wrote letters seeking to challenge his CMC designation
to Defendants Warden Carmine LaBruzzo, Deputy Warden of Security
William Diaz, Warden E.H. Bailey, and Commissioner of Correction
Martin Horn.  He wrote a similar letter to DOC's Intelligence
Unit.  Plaintiff received no responses to these letters.  On
April 23, 2009, Plaintiff spoke to Defendant Grievance Committee
Supervisor Deborah Moultrie, who informed him that CMC
designations were "non-grievable" but failed to record
Plaintiff's oral complaint in the grievance log-book.  (Id. ¶¶
41-58, 63-69.)

Plaintiff also alleges that on May 6, 2009, he received a
documented entitled Review of CMC Designation (the "Review
Form") which informed him of his ability to appeal his CMC
designation to either the Intelligence Unit or the Commissioner

4

of Correction.  (Id. ¶ 55-56.)  The Review Form specifically
stated that if Plaintiff challenged the CMC designation, he
would receive a response from the Intelligence Unit within seven
days and from the Commissioner of Correction within fifteen
days.  (Id. ¶ 56.)  Plaintiff alleges that although he submitted
such a challenge on or about May 8, 2009, he never received a
response.  (Id. ¶¶ 57-58.)  Plaintiff continued to raise a
challenge to his CMC designation by letters to various
Defendants throughout the remainder of his prison term.  (Id. ¶¶
61-70.)

II.  STANDARD OF REVIEW

        Plaintiff brings this action pursuant to 42 U.S.C. § 1983
and the Fourteenth Amendment to the United States Constitution,
for damages resulting from the alleged violation of his
constitutionally protected right to be free from deprivation of
a state-created liberty interest without due process.  Plaintiff
sues Defendants Kinloch and Moultrie only in their individual
capacities and all other Defendants in both their individual and
official capacities.

        A.   Fed. R. Civ. P. 12(b) Motion to Dismiss

        In assessing a motion to dismiss, the Court must accept all
non-conclusory factual allegations as true and draw all
reasonable inferences in the Plaintiff's favor.  Goldstein v.

Pataki, 516 F.3d 50, 56 (2d Cir. 2008).  To survive such a
motion, "a complaint must contain sufficient factual matter,
accepted as true, to 'state a claim to relief that is plausible
on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)
(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).
A pleading that offers "labels and conclusions" or "a
formalistic recitation of the elements of a cause of action will
not do."  Twombly, 550 U.S. at 555.  "Where a complaint pleads
facts that are 'merely consistent with' a defendant's liability,
it 'stops short of the line between possibility and plausibility
of entitlement to relief.'"  Iqbal, 556 U.S. at 678 (quoting
Twombly, 550 U.S. at 557).

    B.   Claims Raised under 42 U.S.C. § 1983

         In an action filed pursuant to 42 U.S.C. § 1983, a
plaintiff must show that the defendants were personally involved
in the alleged constitutional violation.  Gaston v. Coughlin,
249 F.3d 156, 164 (2d Cir. 2001) ("Proof of an individual
defendant's personal involvement in the alleged wrong is, of
course, a prerequisite to his liability on a claim for damages
under § 1983.").  Moreover, there is no respondeat superior
liability available on section 1983 claims.  See Iqbal, 556 U.S.
at 676-77.  As "vicarious liability is inapplicable to . . .

§ 1983 suits, a plaintiff must plead that each Government-
official defendant, through the official's own individual
actions, has violated the Constitution." Id. at 676.  Each
official is "only liable for his or her own misconduct." Id. at
677.  In the context of supervisory defendants, "[a] defendant
is not liable under section 1983 if the defendant's failure to
act deprived the plaintiff of his or her constitutional right."
See, e.g., Joseph v. Fischer, 08 Civ. 2824, 2009 WL 3321011, at
*14 (S.D.N.Y. Oct. 8, 2009).

  C. The Fourteenth Amendment Due Process Clause and State-
     Created Liberty Interests

   In order to succeed on a procedural due process claim, a
plaintiff must establish that (1) he possessed a liberty
interest, and (2) he was deprived of that interest through
insufficient process.  Ortiz v. McBride, 380 F.3d 649, 654 (2d
Cir. 2004) (citing Giano v. Selsky, 238 F.3d 223, 225 (2d Cir.
2001)).  "Liberty interests protected by the Fourteenth
Amendment may arise from two sources—the Due Process Clause
itself and the laws of the States." Hewitt v. Helms, 459 U.S.
460, 466 (1983).  Not all state laws, however, create liberty
interests protected by the Fourteenth Amendment. See, e.g.,
Sandin v. Conner, 515 U.S. 472, 483-84 (1995).  State-created
liberty interests "will be generally limited to freedom from
restraint which, while not exceeding the sentence in such an

unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Id. Accordingly, the mere adoption of procedural guidelines governing day-to-day prison administration, without more, will not give rise to a state-generated liberty interest. See Hewitt, 459 U.S. at 472.

Moreover, different standards apply to different classes of inmates in the prison context. Pretrial detainees claiming a denial of due process based on state law must generally show that the state created a liberty interest by using "explicitly mandatory language in connection with . . . specific substantive predicates" in its statutes or regulations. Id. Further, notwithstanding the use of any particular mandatory language, if state-created procedural rules do not impose "substantive limitations on official discretion," then they do not result in a protected liberty interest. See Walker v. Shaw, No. 08 Civ. 10043, 2010 WL 2541711, at *6 (S.D.N.Y. June 23, 2010) (quoting Korkola v. N.Y.C. Dep't of Corr., No. 84 Civ. 5740, 1986 WL 9798, at *4-5 (S.D.N.Y. Sept. 4, 1986)). Post-sentencing inmates must meet an even more onerous standard, demonstrating that "the state has granted its inmates, by regulation or by

statute, a protected liberty interest" and also that denial of
that interest creates an "atypical and significant hardship
. . . in relation to the ordinary incidents of prison life."
See Arce v. Walker, 139 F.3d 329, 334 (2d Cir. 1998) (internal
citations and quotation marks omitted).

III. DISCUSSION

Plaintiff was housed at Rikers under DOC custody between
February 2, 2009 and October 1, 2009.  He was convicted of the
offense conduct and received a CMC designation on February 6,
2009.  He made his principal challenge to his CMC designation
throughout April and May 2009 prior to sentencing on May 27,
2009.  (See Compl. ¶¶ 10, 24-25, 29, 34, 41-60, 63-69.)
Plaintiff alleges that Defendants' lack of responsiveness to his
CMC designation challenge violated a protected liberty interest
created by Title 40, Chapter 1 of the Rules of the City of New
York.  (See id. ¶¶ 73-76.)  Specifically, section 1-02
("Classification of Prisoners") provides for "the involvement of
the prisoner at every stage with adequate due process."  40
NYCRR § 1-02(e)(2)(iv).  Plaintiff also points to the relevant
DOC implementing regulation, Directive 4505R §§ IV.A, IV.E-G.
(See Plaintiff's Memorandum of Law in Opposition to Defendants'
Motion to Dismiss ("Opp.") at 11 [dkt. no. 43].)  The Court
analyzes these allegations below.

9

A.   Plaintiff's Post-Conviction Status

This suit presents the threshold question of Plaintiff's prisoner designation for purposes of Due Process Clause analysis.  Plaintiff was at all times during the relevant period a convicted inmate, but only became a sentenced inmate on May 27, 2009, after several months as a CMC designee at Rikers. Neither, however, was Plaintiff ever a "pretrial detainee" as that term has previously been used by the Supreme Court of the United States.  See generally, e.g., Sandin, 515 U.S 472, Bell v. Wolfish, 441 U.S. 520 (1979).  The Supreme Court has not expressly held into which category of prisoner a convicted but not-yet-sentenced inmate falls, noting only that "punishment can only follow a determination of guilt after trial or plea."  See Bell, 441 U.S. at 535-36 & n.17; accord Iqbal v. Hasty, 490 F.3d 143, 164-65 (2d Cir. 2007), rev'd on other grounds, Iqbal, 556 U.S. 662.

Nevertheless, Plaintiff argues that logic dictates he be classified as a pretrial detainee for the purposes of this motion, relying on the reasoning in Benjamin v. Malcolm, 646 F. Supp. 1550, 1556 & n.3 (S.D.N.Y. 1986).  (See Opp. at 8.) Plaintiff argues that he would therefore receive the benefit of the lower due process showing required in Hewitt, 459 U.S. at 472.  (See id.)  Defendants counter that the majority of federal

10

circuit court decisions and at least one decision in the
Southern District of New York support the contrary proposition—
that is, convicted inmates awaiting sentencing are no longer
pretrial detainees and are therefore not entitled to the
constitutional protections of that status.  (See Memorandum of
Law in Support of Defendants' Motion to Dismiss ("Def. Mem.") at
6-8 [dkt. no. 40], citing Tilmon v. Prator, 368 F.3d 521, 523
(5th Cir. 2004); Resnick v. Hayes, 213 F.3d 443, 448 (9th Cir.
2000); Whitnack v. Douglas Cnty., 16 F.3d 954, 957 (8th Cir.
1994); Berry v. City of Muskogee, 900 F.2d 1489, 1493 (10th Cir.
1990); Mobayed v. Pastina, No. 94 Civ. 6386, 1996 WL 741744, at
*4 (S.D.N.Y. Dec. 27, 1996).)

    The Court agrees that the Supreme Court's holding in Sandin
makes this distinction somewhat illusory in the context of
prison inmates and state-created liberty interests.  While it
did not expressly overrule Hewitt, the Supreme Court noted that
its decision "abandons an approach that in practice is difficult
to administer and which produced anomalous results."  Sandin,
515 U.S. at 483-84 & n.5.  The Supreme Court has stated that,
however it may be articulated, a cognizable state-created
liberty interest generally must be one that protects against the
sort of restraint that "imposes atypical and significant
hardship on the inmate in relation to the ordinary incidents of

11

prison life." Id. at 484.  Ultimately, this Court agrees with
the above-cited authority suggesting that Plaintiff cannot be
classified as a "pretrial detainee" for Due Process Clause
purposes, finding this conclusion to be most consistent with the
prior precedents from the Supreme Court of the United States,
the Court of Appeals, and this district.  Even if this
conclusion were less certain, however, Plaintiff has failed to
state an actionable state-created liberty interest for the
reasons that follow.

     B.   Plaintiff Fails to State an Actionable Liberty
         Interest

Courts in this Circuit, including the Court of Appeals,
have looked at regulations similar to 40 NYCRR § 1-02(e)(2)(iv)
and uniformly concluded they do not comprise a state-created
liberty interest enforceable under the Fourteenth Amendment.
"The CMC designation is an administrative designation designed
to allow the DOC to be aware of the housing, case status, and
transport of inmates who require special monitoring—inmates, for
example, with a history of escapes . . ." Adams v. Galetta, No.
96 Civ. 3750, 1999 WL 959368, at *2 (S.D.N.Y. Oct. 19, 1999).
Plaintiff has raised no allegations in the Second Amended
Complaint of conditions created by a CMC designation that impose
"atypical and significant hardship[s] . . . in relation to the
ordinary incidents of prison life." Sandin, 515 U.S. at 484.

In fact, when the Court of Appeals reviewed a similar claim arising out of the federal analog to the CMC designation at issue in this case, it found no protected liberty interest, even where the attendant hardships to the inmate were far greater than those alleged here.  See, e.g., Pugliese v. Nelson, 617 F.2d 916, 919 (2d Cir. 1980) (noting that CMC designation in federal prisons "usually delays and often precludes" prisoners "from obtaining transfers, furloughs or participation in community activities, such as work release . . .").  The Court of Appeals observed that owing to the broad discretionary authority federal prison officials enjoyed in imposing CMC designations, no protected liberty interest was created that would require due process in imposing the designation.  See id. at 923-24; see also Sher v. Coughlin, 739 F.2d 77, 81 (2d Cir. 1984) (placement of New York State prisoner in a Reclassification Unit did not deprive the prisoner of a liberty interest because the governing statute and pertinent regulation gave unlimited discretion to the State Department of Correctional Services to select and classify inmates for purposes of assignment to restrictive housing units).

Judges in the Southern District of New York have made similar observations in analyzing the same CMC process, code sections, and regulations Plaintiff invokes in this case.  In

Korkola, Judge Carter analyzed DOC regulations including the version of Directive 4505R in effect at the time, concluding that the directive gave prison officials "unlimited discretion" in the classification and restrictive housing of inmates, and thus implicitly found that a liberty interest was not thereby created. 1999 WL 959368, at *5. Similarly, in Walker, Judge McMahon reviewed both 40 NYCRR § 1-02(e) and DOC Directive 4505R, concluding that neither created an actionable liberty interest in the classification of inmates either as CMC or Security Risk Group ("SRG"). 2010 WL 2541711, at *4-6. In Adams, Judge Koeltl also reviewed section 1-02(e) and DOC Directive 4505R, this time under the more lenient Hewitt standard, nonetheless concluding that no liberty interest was created either by the regulations or the DOC directive. 1999 WL 959368, at *5. Finally, in Palacio v. Ocasio, No. 02 Civ. 6726, 2006 WL 2372250 (S.D.N.Y. Aug. 11, 2006), Judge Crotty dismissed a due process claim for an allegedly erroneous CMC designation brought by a pretrial detainee who had yet to be charged, finding that no protected liberty interest existed. 2006 WL 2372250, at *8, aff'd, Palacio v. Pagan, 345 F. App'x 668 (2d Cir. 2009).

Plaintiff takes issue with these authorities, arguing that they address "challenges to the CMC designation itself, not to

14

the inmate's right to be involved in the related procedures."
(See Opp. at 12.)  At least three of these cases, however,
addressed these very issues.  In Korkola, the plaintiff claimed
he was denied a proper hearing regarding his CMC status.  1986
WL 9798, at *1.  In Palacio, the plaintiff claimed he was not
given a hearing concerning his CMC status, that he challenged
that status on numerous occasions, first complaining to
correction officers and then filing formal written grievances
about twice a week in every correctional facility in which he
was housed, and writing a letter to the Superintendant of the
Manhattan Detention Center, to which he received no response.
2006 WL 2372250, at *4.  In Walker, the plaintiff claimed he was
given his SRG status without notice or an opportunity to be
heard and that he was not given any classification review when
he challenged the designation.  2010 WL 2541711, at *2-3.  In
each case, the plaintiff raised an argument regarding his
claimed right to be involved in the CMC designation process.

     Moreover, Judge Koeltl responded to this precise argument
in Adams.  There, the plaintiff argued that he "'is not claiming
his designation in which he was housed violated his
constitutional rights.  But the means in which he was placed and
kept under CMC status.'"  Adams, 1999 WL 959368, at *6 n.2
(quoting the plaintiff's opposition papers).  Judge Koeltl

observed, however, that "if the designation is not the deprivation of a liberty interest, then the prison authorities were not constitutionally required to afford due process in imposing it."  Id.; see also Walker, 2010 WL 2541711, at *5 ("Because prisoners have no liberty interest in being free from classification, they are also not entitled to due process before they are classified or prior to the imposition of conditions necessitated by their classification.").  This Court agrees. For these reasons, Plaintiff's arguments on this point are without merit.

The Court rejects Plaintiff's final argument that the duration of his CMC designation renders the above-cited cases inapposite or creates an independent basis upon which to find a protected liberty interest.  (See Opp. at 15-16.)  Plaintiff remained in CMC status for 178 days (or just under six months). (Compl. ¶¶ 34.)  By contrast, in Adams, the plaintiff was in CMC status for eight months.  1999 WL 959368, at *2-3.  In Korkola, the plaintiff was in CMC status for almost two years.  1986 WL 9798, at *1-3.  Moreover, the Court agrees that Wright v. Smith, 21 F.3d 496 (2d Cir. 1996), to which Plaintiff cites for this proposition, (see Opp. at 15-16), is itself inapposite as the Court of Appeals found exactly the sort of "substantive predicates" in Wright that are lacking in the cases cited above

16

and in the case at bar.  See <u>Wright</u>, 21 F.3d at 498-500; <u>Hewitt</u>, 459 U.S. at 472.

The Court therefore concludes that Plaintiff has failed to state a claim for a state-created liberty interest actionable under the Fourteenth Amendment to the United States Constitution.  Because the Court so finds, it does not proceed to the issues of individual, official, or supervisory liability under 42 U.S.C. § 1983.  Because the Court finds that any further amendment of the complaint would be futile, the action is dismissed with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Second Amended Complaint [dkt. no. 38] is granted in its entirety and with prejudice.  The Clerk of the Court is directed to terminate this action and deny all pending motions as moot.


SO ORDERED.

Dated:    August **31**, 2012
          New York, New York


LORETTA A. PRESKA
Chief U.S. District Judge


17